<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
RACHEL B. MORLEY,                   :
                                    :    CIVIL ACTION NO. 04-409 (MLC)
         Plaintiff,                 :
                                    :    MEMORANDUM OPINION
    v.                              :
                                    :
AVAYA INC. LONG TERM                :
DISABILITY PLAN FOR SALARIED        :
EMPLOYEES, et al.,                  :
                                    :
         Defendants.                :
_____   :
```

<u>COOPER, District Judge</u>

The parties have filed various motions and cross motions for summary judgment in an Employee Retirement Income Security Act ("ERISA") action brought by the plaintiff, Rachel B. Morley. Morley asserts claims against the defendants, Avaya Inc. ("Avaya") Long Term Disability Plan for Salaried Employees ("Avaya LTD Plan"), Gates McDonald, Inc. ("Gates"), Plan Administrator of the Avaya LTD Plan ("Plan Administrator"), and Avaya Benefit Claim and Appeal Committee ("BCAC") (collectively, "the defendants"), for (1) wrongful denial of benefits under 29 U.S.C. § ("Section") 1132(a)(1)(B), (2) breach of fiduciary duty, and (3) disclosure penalties under Section 1132(c). (Compl.)

The defendants move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) seeking to have the Court apply an "arbitrary and capricious" standard of review to determine Morley's entitlement to LTD benefits under the Avaya

LTD Plan.  (Dkt. entry no. 27.)  Morley cross-moves for summary judgment seeking to have the Court review her wrongful denial of LTD benefits claim under a _de novo_ standard.  (Dkt. entry no. 31.)  The Court will (1) deny the part of the cross motion to determine the standard of review to the extent it seeks to have the Court apply a _de novo_ standard, and (2) deny without prejudice the part of the cross motion to the extent it seeks to have the Court apply a heightened arbitrary and capricious standard of review.  The Court will also (1) grant the part of the motion seeking to have the Court apply an arbitrary and capricious standard of review, and (2) deny without prejudice the part of the motion seeking to have the Court apply the arbitrary and capricious standard of review without heightened scrutiny.

The defendants have also separately moved for summary judgment on Morley's claim for disclosure penalties under Section 1132(c).  (Dkt. entry no. 28.)  Morley has cross-moved for summary judgment seeking an award of penalties on this claim.  (Dkt. entry no. 30.)  The Court will (1) grant the motion seeking dismissal of the disclosure claim, and (2) deny Morley's cross motion seeking an award of disclosure penalties.

The defendants have moved for summary judgment seeking to offset (1) social security disability benefits, (2) workers' compensation benefits, and (3) monies paid as part of an employment discrimination lawsuit, against any potential award of

LTD benefits.  (Dkt. entry no. 29.)  The Court will (1) grant the part of the motion seeking an offset of (a) social security benefits, and (b) temporary workers' compensation benefits, (2) deny the part of the motion seeking an offset for monies paid to Morley as part of her employment discrimination lawsuit against Avaya, and (3) deny without prejudice the part of the motion seeking an offset for any award of permanent workers' compensation benefits.

The defendants also move for summary judgment on (1) the breach of fiduciary duty claim, and (2) the wrongful denial of benefits claim as to BCAC and Gates.  (Dkt. entry no. 45.)  The Court will grant the motion.

The defendants have also moved, and Morley has cross-moved, to determine the scope of the administrative record.  (Dkt. entry nos. 46, 47.)  The Court, for the reasons stated herein, will (1) grant the part of the motion seeking to include all documents reviewed by both BCAC Committees (through December 10, 2004), and (2) deny the part of the cross motion seeking to limit the scope of the administrative record to include only those documents submitted from December 2001 (for BCAC's first review) through the commencement of this litigation on January 29, 2004.  The Court will also (1) grant the part of the motion seeking to exclude certain documents, including proposed exhibits 4, 14, 67, 77, 80, 132-133, 141-142, 144, and 147-152, and (2) deny without

prejudice the part of the motion seeking to exclude proposed exhibits 11, 35-37, 47-48, 98-99, and 134-35.  The Court will further (1) grant the part of the cross motion seeking to (a) exclude records relating to Morley's superior court litigation against Avaya from the administrative record, and (b) include the (i) January 23, 2002 report of John Knightly, MD, (ii) January 30, 2002 job description prepared by James Bird of Avaya, (iii) March 11, 2004 report of Allyson K. Hurley, DDS, and (iv) February 10, 2003 medical report by Donald H. Frank, MD, in the administrative record, (2) deny the part of the cross motion insofar as it seeks to exclude from the administrative record (a) any "guidance, comments, or information" provided by BCAC Medical Advisor Alladin Motta, MD, and (b) the report of Joseph Basinger, MD, and (3) deny without prejudice the part of the cross motion to the extent that it seeks to include in the administrative record proposed exhibit 11.

<u>**BACKGROUND**</u>

## I.   Materials Considered

The Court has, in addition to the other documents of record, considered:

(1)   Defendants' Brief in Support of Motion for Summary Judgment to Determine the Standard of Review ("Defs. Standard Br.") and January 27, 2006 Certification of Kori A. Connelly, Esq. ("1-27-06 Connelly Cert. I"), with attached exhibits.  (Dkt. entry no. 27.)

(2)   Defendants' Brief in Support of Motion for Partial Summary Judgment on Disclosure Claim ("Defs. Disclosure Br.") and

January 27, 2006 Connelly Certification ("1-27-06 Connelly Cert. II"), with attached exhibits.  (Dkt. entry no. 28.)

(3)   Defendants' Brief in Support of Motion for Summary Judgment as to the LTD Offset Issue ("Defs. Offset Br.") and January 29, 2006 Connelly Certification ("1-29-06 Connelly Cert."), with attached exhibits.  (Dkt. entry no. 29.)

(4)   Plaintiff's Brief in Support of Cross Motion for Summary Judgment on Disclosure Penalties ("Pl. Disclosure Br.") and January 27, 2006 Certification of Matthew Justice Vance, Esq. ("1-27-06 Vance Cert. I"), with attached exhibits. (Dkt. entry no. 30.)

(5)   Plaintiff's Brief in Support of Cross Motion for Summary Judgment to Determine the Standard of Review ("Pl. Standard Br.") and January 27, 2006 Vance Certification ("1-27-06 Vance Cert. II"), with attached exhibits.  (Dkt. entry no. 31.)

(6)   Defendants' Brief in Opposition to Plaintiff's Cross Motion for Summary Judgment on Disclosure Penalties ("Defs. Disclosure Opp. Br.") and February 10, 2006 Connelly Certification ("2-10-06 Connelly Cert. I"), with attached exhibits.  (Dkt. entry no. 33.)

(7)   Defendants' Brief in Opposition to Plaintiff's Cross Motion for Summary Judgment to Determine the Standard of Review ("Defs. Standard Opp. Br.") and February 10, 2006 Connelly Certification ("2-10-06 Connelly Cert. II"), with attached exhibits.  (Dkt. entry no. 34.)

(8)   Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment as to LTD Offset Issue ("Pl. Offset Opp. Br.") and February 10, 2006 Vance Certification ("2-10-06 Vance Cert. I"), with attached exhibits.  (Dkt. entry no. 35.)

(9)   Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment on the Disclosure Claim ("Pl. Disclosure Opp. Br.") and February 10, 2006 Vance Certification ("2-10-06 Vance Cert. II"), with attached exhibits.  (Dkt. entry no. 36.)

(10)  Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment to Determine the Standard of Review ("Pl. Standard Opp. Br.") and February 10, 2006 Vance Certification ("2-10-06 Vance Cert. III"), with attached exhibits.  (Dkt. entry no. 37.)

(11) Defendants' Brief in Opposition to Plaintiff's Cross Motion to Determine the Standard of Review ("Defs. Standard Opp. Br.") and February 10, 2006 Connelly Certification ("2-10-06 Connelly Cert. III"), with attached exhibits.  (Dkt. entry no. 38.)

(12) Plaintiff's Reply Brief in Support of Cross Motion for Summary Judgment to Determine the Standard of Review ("Pl. Standard Reply Br.") and February 27, 2006 Vance Certification ("2-27-06 Vance Cert."), with attached exhibits.  (Dkt. entry no. 40.)

(13) Plaintiff's Reply Brief in Support of Cross Motion for Summary Judgment on Disclosure Penalties ("Pl. Disclosure Reply Br.").  (Dkt. entry no. 41.)

(14) Defendants' Reply Brief in Support of Motion for Partial Summary Judgment on Disclosure Claim ("Defs. Disclosure Reply Br.") and March 2, 2006 Connelly Certification ("3-2-06 Connelly Cert. I"), with attached exhibits.  (Dkt. entry no. 42.)

(15) Defendants' Reply Brief in Support of Motion for Summary Judgment as to LTD Offset Issue ("Defs. Offset Reply Br.") and March 2, 2006 Connelly Certification ("3-2-06 Connelly Cert. II"), with attached exhibits.  (Dkt. entry no. 43.)

(16) Defendants Brief in Support of Motion for Summary Judgment on Plaintiff's Breach of Fiduciary Duty Claim ("Defs. Fiduciary Br.") and March 14, 2006 Connelly Certification ("3-14-06 Connelly Cert."), with attached exhibits.  (Dkt. entry no. 45.)

(17) Defendants' Brief in Support of Motion for Summary Judgment to Determine the Scope of the Administrative Record ("Defs. Admin. Rec. Br.").  (Dkt. entry no. 46.)

(18) Plaintiff's Brief in Support of Cross Motion for Summary Judgment to Settle the Contents of the Administrative Record ("Pl. Admin. Rec. Br.") and March 14, 2006 Vance Certification ("3-14-06 Vance Cert."), with attached exhibits.  (Dkt. entry no. 47.)

(19) Defendants' Brief in Opposition to Plaintiff's Cross Motion for Summary Judgment to Settle the Contents of the Administrative Record ("Defs. Admin. Rec. Opp. Br.") and March 20, 2006 Connelly Certification ("3-20-06 Connelly Cert."), with attached exhibits.  (Dkt. entry no. 48.)

6

(20)  Plaintiff's Brief in Opposition to Defendants' Motion for
      Summary Judgment on Breach of Fiduciary Duty Claim ("Pl.
      Fiduciary Opp. Br.") and March 20, 2006 Vance Certification
      ("3-20-06 Vance Cert. I"), with attached exhibits.  (Dkt.
      entry no. 49.)

(21)  Plaintiff's Brief in Opposition to Defendants' Motion for
      Summary Judgment to Determine the Scope of the
      Administrative Record ("Pl. Admin. Rec. Opp. Br.") and March
      20, 2006 Vance Certification ("3-20-06 Vance Cert. II"),
      with attached exhibits.  (Dkt. entry no. 50.)

(22)  Plaintiff's Reply Brief in Support of Cross Motion for
      Summary Judgment to Settle the Contents of the
      Administrative Record ("Pl. Admin. Rec. Reply Br.") and
      March 27, 2006 Vance Certification ("3-27-06 Vance Cert."),
      with attached exhibits.  (Dkt. entry no. 51.)

**II.  Factual And Procedural History**

   **A.  Morley's Employment at Avaya & Alleged Injury**

      Morley is a former Avaya employee who was injured in

December 2001.  (Dkt. entry no. 39, Joint Final Pretrial Order

("Pretrial Ord."), at 4.)  Avaya had formerly employed Morley as

a manager responsible for services on corporate flights.  (1-29-

06 Connelly Cert., at Ex. A, 12-20-04 Morley Dep. Tr. ("Morley

Tr."), at 19.)[1]  Morley's responsibilities included, <u>inter</u> <u>alia</u>,

(1) managing a small flight attendant staff, (2) requisitioning

and delivering catering services on flights, (3) budgeting for

staff and catering, (4) establishing maintenance of cabin safety,

and (5) delivering in-flight services.  (Morley Tr., at 19-24.)

Morley testified that she injured her back by lifting and

carrying food trays while attending a culinary training class on

_____
      [1] Morley had worked as a corporate flight attendant for
Avaya's predecessor, Lucent Technologies ("Lucent").  (Morley
Tr., at 18.)

December 21, 2001.  (Id. at 48-50.)  Morley suffered a herniation

of the L5-S1 intervertebral disc.  (1-29-06 Connelly Cert., at

Ex. B, Attending Physician, Dr. John Knightly's 6-7-02 Stmt. of

Disability for Morley.)  Morley's last day of work with Avaya was

December 21, 2001.  (Pretrial Ord., at 4.)

### B.   Morley's Application to Gates for LTD Benefits & Terms of LTD Plan

Morley initially received short-term disability benefits

from Avaya, and she applied for LTD benefits under the Avaya LTD

Plan in July 2002 after her short-term disability benefits

expired.  (Compl., at ¶ 16; Pretrial Ord., at 4.)  Morley

submitted the claim for LTD benefits to the Claims Administrator,

Gates.  (Pretrial Ord., at 4.)  At the time Morley's benefit

claim was under review, the Avaya LTD Plan operated under a

Summary Plan Description ("Avaya SPD"), effective January 1,

2001.  (Defs. Standard Br., at 5; 1-27-06 Connelly Cert. I, at

Ex. A, Avaya SPD.)[2]  The Avaya SPD provides in pertinent part the

following "Claim Denial and Appeal Procedure[]":

> Participants . . . have the right under ERISA and the LTD
> Plan to file a written claim for benefits with the Claims
> Administrator [(Gates)].
>
> If a claim is denied in whole or in part, the claimant
> will receive a written notice from the Claims
> Administrator of the Claims Administrator's decision,

---

[2] Lucent "spun off" Avaya in October 2000, such that
"originally all of the Avaya Plans were Lucent Plans."  (Defs.
Standard Br., at 5; 1-27-06 Connelly Cert. I, at Ex. B, 2-3-05
Ronald M. Hershkowitz Dep. Tr. ("Hershkowitz Tr."), at 99.)

including the specific reason for the decision, within 90 days after the Claims Administrator received the claim. The written notice will include[, _inter_ _alia_,] [t]he specific reason(s) for the denial . . ..

* * *

If you submit your claim according to the procedures described in this section and you do not hear from the Claims Administrator within the time limits given here, your claim is considered denied.

If a claim for benefits is denied in whole or in part, or if you . . . believe that benefits under the LTD Plan to which you are entitled have not been provided, an appeal process is available to you. You . . ., or your authorized representative may appeal in writing within 180 days after the denial is received or the 45-day period (as extended) period [sic] has expired.

**Appeal Procedures**

A claimant can appeal a denied claim if[, _inter_ _alia_,] . . . [w]ritten denial of the claim is received within the appropriate time frame and the claimant wants to appeal it.

If you wish to file an appeal, you must do so in writing within 180 days of receiving notification of the Claims Administrator's decision. You are entitled to request a copy and review the LTD Plan "Plan Document" when you prepare your appeal. If you believe an error has occurred, you can support your request by giving the reason you think there is an error. . . . Send a written request for review of any denied claim directly to the Claims Administrator[.]

The Claims Administrator will conduct a review and make a final decision within 60 days after receiving the written request for review.

Although this decision is final and not subject to further review, you . . . may have additional rights under ERISA. However, applicable law and the LTD Plan's provisions require you to pursue all your claim and appeal rights on a timely basis _before_ seeking any other legal recourse regarding claims for benefits.

(Avaya SPD, at 17-19 (emphasis in original).)  The Avaya SPD

further states that the Plan Administrator has

full discretionary authority and power to control and
manage all aspects of the LTD Plan, to determine
eligibility for LTD Plan benefits, to interpret and
construe the terms and provisions of the LTD Plan, to
determine questions of fact and law, to direct
disbursements, and to adopt rules for the administration
of the LTD Plan as they may deem appropriate in
accordance with the terms of the LTD Plan and all
applicable laws.

(Id. at 21.)

The Avaya SPD indicates that it "is designed to describe the

Avaya [LTD Plan] in easy-to-understand terms.  It is shorter and

less technical than the legal LTD Plan document.  However, it is

the Plan document and contract that determine your rights under

the Plan.  In all instances, the Plan document will govern." (Id.)

Lucent's "Long-Term Disability Plan for Management

Employees" (the "Lucent LTD Plan") was also operative before the

promulgation of the Avaya LTD Plan and was the basis of the Avaya

SPD.  (1-27-06 Connelly Cert. I, at Ex. C., 9-15-04 Aff. of

Shelley Anderson ("Anderson Aff."), at 2.)  The Lucent LTD Plan

provides that:

The Claims Administrator shall serve as the final review
Committee under the Plan and shall have sole and complete
discretionary authority to determine conclusively for all
parties, and in accordance with the terms of the
documents or instruments governing the Plan, any and all
questions arising from the administration of the Plan and
interpretation of all Plan provisions, determination of
all questions relative to participation of Eligible
Employees . . . and eligibility for benefits,
determination of all relevant facts, the amount and type
of benefits payable to any Eligible Employee . . . and
construction of all terms of the Plan.  The Claims
Administrator shall use appeals procedures that comply
with the requirements of ERISA.

10

> Notwithstanding the foregoing, Lucent . . . shall have sole and complete discretionary authority to determine questions relating to eligibility of employees for membership in the Plan and to amend or terminate the Plan at any time. Respective decisions by the Claims Administrator and Lucent . . . shall be conclusive and binding on all parties and not subject to further review.

(1-27-06 Connelly Cert. I, at Ex. D, Lucent LTD Plan, at 19.)

The Avaya LTD Plan provides an additional layer of internal appellate review by which claimants may appeal LTD claim denials by the Claims Administrator, Gates, to BCAC. (Anderson Aff., at 1-2; see 1-27-06 Connelly Certif. I, Ex. E, Avaya LTD Plan ("The written request for review of any denied claim or other disputed matter should be sent directly to BCAC.").) The Avaya LTD Plan also states that:

> BCAC shall serve as the final authority under the Plan and shall have sole and complete discretionary authority to determine conclusively for all parties, and in accordance with the terms of the documents or instruments governing the Plan, any and all questions arising from administration of the Plan and interpretation of all Plan provisions, determination of all questions relating to participation of Salaried Employees and eligibility for Disability Benefits, determination of all relevant facts, the amount and type of Disability Benefits payable to any Participant, and construction of all terms of the Plan.
>
>                            *  *  *
>
> The BCAC shall be the final review committee, with the authority to uphold or overturn denials of Disability Benefits by the Claims Administrator.

(Id. at AV 01286-01287.) The Avaya LTD Plan further provides, under the heading "Conclusive Determination by the BCAC" that

> [t]he BCAC shall be the final review committee under the Plan, with the authority to determine conclusively for all parties any and all questions arising from the

administration of the Plan, and shall have sole and
complete discretionary authority and control to manage
the operation and administration of the Plan, including,
but not limited to, the determination of all questions
relating to eligibility for participation and Disability
Benefits, interpretation of all Plan provisions,
determination of the amount and kind of Disability
Benefits payable to any Participant . . ., and
construction of disputed or doubtful terms. Such
decisions shall be conclusive and binding on all parties
and not subject to further review.

(Id. at AV 01287.)

Gates denied Morley's claim for LTD benefits by letter dated
August 13, 2002. (Pretrial Ord., at 5.) In the letter, Gates
advised Morley that it denied her claim because her doctor, Dr.
Knightly, did not "totally disable you from any occupation and to
date has not submitted any further medical documentation to
support the [LTD] benefit." (Id.)

### C. Morley's Request for Disclosures

Morley's counsel submitted a request for disclosures by
letter dated December 20, 2002, addressed to the "Secretary,
Avaya [BCAC]", including a carbon copy to the "Plan
Administrator." (Id. at 6.) Morley's counsel requested the
disclosure of 15 categories of items:

(1) the Plan's Summary Plan Description;

(2) the underlying plan document; i.e., the document
which is summarized by the Summary Plan
Description;

(3) any Summary of Material Modifications issued since
the time Ms. Morley's participation in the Plan
commenced;

12

(4)   the last-filed Form 5500, including any schedules,
      addenda, and attachments;

(5)   any reports, analyses, documents, and/or opinions
      generated by, prepared by, or contributed to by Dr.
      Scott Eisenberg with respect to Ms. Morley;

(6)   any document(s), manual(s), and/or resource(s)
      relied upon by Dr. Eisenberg in assessing and/or
      opining on Ms. Morley's condition; if same is part
      of a multi-volume treatise or compilation, . . . a
      copy of the section or subpart containing the
      above-noted information and provide adequate
      citations to those portions not provided;

(7)   any schedules, methodologies, procedures, training
      materials, or any other documents relied upon by
      any representative of Ms. Morley's former employer,
      any third-party administrator or service provider,
      or any representative of an organization affiliated
      with or related to the plan sponsor in determining
      Ms. Morley's entitlement to benefits under the Plan
      (save for those documents provided in response to
      item #6 herein);

(8)   with respect to Ms. Morley's participation in the
      Plan, and save for any information provided in
      response to items #5 and item #6 herein, any
      reports, analyses, documents, and/or opinions
      generated by, relied upon, prepared by, or
      contributed to by any individual employed by,
      affiliated with, or associated in any way with the
      Plan, the plan sponsor, or any third-party
      administrator;

(9)   any document(s), manual(s), and/or resource(s)
      relied upon by any individual or organization (save
      for the material provided in response to item #5
      and item #6 herein) in assessing and/or opining on
      Ms. Morley's condition; if same is part of a multi-
      section treatise or compilation, . . . a copy of
      the section or subpart containing the above-noted
      information and provide adequate citations to those
      portions not provided;

(10)  with respect to Ms. Morley's participation in the
      Plan, please provide any documents generated by,
      relied upon, submitted to, prepared by, and/or

13

contributed to by the Concentra Medical Examinations organization or any individual(s) affiliated with, employed by, or in any way connected with same;

(11) any documents which describe, reference, explain, amplify and/or define the phrase "totally disable" as used in Ms. Gail M. Foley's letter to Ms. Morley dated August 13, 2002;

(12) any memoranda, notes, correspondence, computer files, electronic media, video tapes, recordings or any other document(s), or any concepts, ideas, or beliefs the expression of which is affixed in any tangible medium of expression generated with respect to the processing, analysis, review, and/or examination of Ms. Morley, her medical, surgical, health, and/or disability status, and/or her participation in the Plan;

(13) any prior or concurrent analyses performed with respect to Ms. Morley's participating in any plan or arrangement sponsored by the current Plan sponsor and any predecessor organization of or successor organization to the current Plan sponsor (whether or not said plan or arrangement is subject to ERISA) save for those items requested herein;

(14) save for those items provided in response to other requests herein, any schedules, methodologies, procedures, training materials, or any other documents establishing a policy or policies for processing requests for long term disability benefits from the Plan; and

(15) save for those items provided in response to other requests herein, any other documents which relate to any aspect of Ms. Morley's entitlement to benefits, participation in the Plan, and/or the termination of Ms. Morley's benefits[.]

(1-27-06 Connelly Cert. II, at Ex. D, 12-20-02 Letter from Vance to BCAC.)

The Avaya Communication, Health, Environment & Safety Service processed the disclosure request on January 9, 2003. (1-

14

27-06 Connelly Cert. II, at Ex. E, Defs. Answer to Request for
Admissions No. 1.)  BCAC, by letter dated January 29, 2003,
provided Morley's counsel with a copy of (1) the Avaya SPD, (2)
the Lucent LTD Plan, (3) a request to extend time to file a Form
5500, (4) the medical file from Gates, including (a) the Gates
case summary, (b) claim log notes, (c) medical reports from Dr.
Kaufman, (d) a Physician's Report dated January 9, 2002, (e) a
report from Jane F. Kaiser, R.N., A.P.N., and (f) a report from
Kristen Westa MSPT, and (4) a U.S. Compensation & Benefits News
Special Report.  (Pretrial Ord., at 6-7.)  Hershkowitz, an
attorney for BCAC, participated in a telephone conversation with
Morley's counsel, Matthew Vance, on January 29, 2003.  (Id.)
During this conversation, Hershkowitz advised Vance that Avaya
could not provide all of the requested information within the 30-
day period, and extended the time for Morley to file her appeal
because of the inability to produce the documents within 30 days
of the date of her letter.  (Id.)  No summary of material
modifications was made as of the time of Morley's request for
disclosures other than as provided to her in the January 29, 2003
response.  (Id. at 7.)

    **D.  Morley's Appeal to BCAC**

    Morley appealed Gates's denial of her LTD benefit claim by
letter from her attorney dated February 11, 2003.  (Id. at 5.)
Shelley Anderson, Secretary for BCAC, advised Morley — through

her attorney — by letter dated March 17, 2003, that BCAC tabled
her appeal at its March 17, 2003 meeting until April 4, 2003.
(Id.)  BCAC informed Morley, by letter dated April 24, 2003 to
her attorney, that BCAC denied her appeal for LTD benefits at an
April 18, 2003 meeting.  (Id.)

    **E.   The Complaint**

    Morley brought this action against the defendants on January
29, 2004.  (Dkt. entry no. 1.)  In Count I of the complaint,
Morley alleges that the defendants wrongfully denied her claim
for LTD benefits.  (Compl., at 7-8.)  Morley asserts in Count II
that the defendants breached their fiduciary duty to her in
violation of Section 1104.  Morley alleges that the defendants
"fail[ed] to provide her the basic due process guarantees
required by 29 U.S.C. § 1133" by (1) wrongfully denying a full,
fair and impartial review of her benefits claims; (2) ignoring
records and opinions of her treating physicians showing she is
disabled; and (3) providing a "claim denial and appeal denial
which fails to provide certain items of information required in
such denials."  (Compl., at 8-9.)  Morley also asserts that the
defendants violated ERISA by failing to disclose certain
documents to her.  (Compl., at 9.)  Morley seeks:

> 1.   . . . [D]eclaratory and injunctive relief, finding
> that she is entitled to long-term disability benefits
> under the terms of the Plan and that [the d]efendants be
> ordered to pay long-term disability benefits according to
> the terms of the Plan until such time as . . . [she] is
> no longer disabled or reaches the age of 65;

16

2.   . . . [A]warding . . . [her] the full $110.00 *per*-item, *per*-day penalty permitted by Title I of ERISA and the implementing regulations[;]

3.   . . . [A]warding [her] all reasonable attorneys fees and expenses incurred as a result of [the] defendants' wrongful denial in providing coverage pursuant to 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)[; and]

4.   . . . [A]ward for such other relief as may be just and appropriate.

(Compl., at 9-10 (emphasis in original).)   The defendants answered the complaint on April 29, 2004.  (Dkt. entry no. 7.)

**F.   BCAC's Second Review of Morley's Claim**

BCAC advised Morley by letter dated August 20, 2004, that it was meeting in September 2004, and would vote as to whether it would rehear her appeal since she had submitted three additional letters not in time for the original hearing.  (Pretrial Ord., at 5.)  The three letters included: (1) Dr. Marcia Sherman's April 11, 2003 report; (2) Dr. John Knightly's May 2, 2003 report; and (3) Dr. John Knightly's May 5, 2003 report.  (Id. at 6.)  BCAC agreed at a September 17, 2004 meeting to rehear Morley's appeal with the new documentation.  (Id.)  BCAC sent Morley's medical documentation in October 2004 to Dr. Joseph Basinger for his independent medical review.  (Id.)  Dr. Basinger prepared a report dated October 25, 2004.  (Id.)  BCAC provided a copy of that report to Morley.  (Id.)  At the BCAC meeting on December 10, 2004, BCAC again voted to deny Morley's appeal and entitlement to LTD benefits.  (Id.)

17

## DISCUSSION

### I.   Standard For Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the

18

[non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II.  Applicable Standard Of Review To Morley's Benefits Claim

### A.  Standards of Review

A district court should review a denial of ERISA plan benefits under a de novo standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan confers such discretion, a district court should apply a deferential "arbitrary and capricious" standard. Id. at 111-12; Smathers v. Multi-Tool, Inc./Multi-

19

Plastics, Inc. Employee Health & Welfare Plan, 298 F.3d 191, 194
(3d Cir. 2002).  Under the arbitrary and capricious standard, a
district court will uphold a plan administrator's interpretation
of a plan if it is reasonable, i.e., unless the plan
administrator's decision was "without reason, unsupported by
substantial evidence, or erroneous as a matter of law."  Pinto v.
Reliance Stand. Life Ins. Co., 214 F.3d 377, 393 (3d Cir. 2000).
"This scope of review is narrow, and the court is not free to
substitute its own judgment for that of the [plan administrator]
in determining eligibility for plan benefits."  Mitchell v.
Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997).

       "If a benefit plan gives discretion to an administrator or
fiduciary who is operating under a conflict of interest, that
conflict must be weighed as a factor in determining whether there
is an abuse of discretion."  Firestone, 489 U.S. at 115; see
Kosiba v. Merck & Co., 384 F.3d 58, 64 (3d Cir. 2004) ("[I]n
reviewing an ERISA plan fiduciary's discretionary determination
regarding benefits, a court must take into account the existence
of the structural conflict of interest present when a financially
interested entity also makes benefit determinations.").  Thus,

       "when an insurance company both funds and administers
       benefits, it is generally acting under a conflict that
       warrants a heightened form of the arbitrary and
       capricious standard of review."  [Pinto, 214 F.3d at
       378].  This "heightened" form of review is to be
       formulated on a sliding scale basis, which enables [a
       court] to "review[] the merits of the interpretation to
       determine whether it is consistent with an exercise of

discretion by a fiduciary acting free of the interests
that conflict with those of beneficiaries." [Id.] at 391
(quoting <u>Doe v. Group Hospitalization & Med. Servs.</u>, 3
F.3d 80, 87 (4th Cir. 1993)).  In employing the sliding
scale approach, [courts] take into account the following
factors in deciding the severity of the conflict: (1) the
sophistication of the parties; (2) the information
accessible to the parties; (3) the exact financial
arrangement between the insurer and the company; and (4)
the status of the fiduciary, as the company's financial
or structural deterioration might negatively impact "the
presumed desire to maintain employee satisfaction."
[<u>Id.</u>] at 392.

<u>Stratton v. E.I. DuPont de Nemours & Co.</u>, 363 F.3d 250, 254 (3d

Cir. 2004).

### B.   Application of The De Novo Standard of Review Is Not Warranted

Morley contends that the Court should apply a <u>de novo</u>

standard of review because the Avaya LTD Plan provides

conflicting and ambiguous grants of discretion regarding employee

plan eligibility between the Claims Administrator, Gates, and the

Plan Administrator (or BCAC).  (Pl. Standard Br., at 2.)  Morley

notes that the Plan provides that, <u>inter alia</u>, the Claims

Administrator — Gates — "shall serve as the final review committee

under the Plan and shall have sole and complete discretionary

authority to determine conclusively for all parties . . .

eligibility for benefits."  (<u>Id.</u> at 4 (quoting Lucent LTD Plan,

at 19).)  Morley argues that this language shows that Gates is

the final decision-maker as to eligibility under the Plan. (<u>Id.</u>)

Morley asserts that the Avaya SPD, however, provides the

Plan Administrator with a conflicting grant of authority because

it states that the "Plan Administrator has the full discretionary authority and power to control and manage all aspects of the LTD Plan." (Id. (quoting Avaya SPD, at 21).)  Morley contends that this grant of discretion to the Plan Administrator "directly conflicts" with the authority provided to Gates under the Plan. (Id.)  Further, Morley points out that, to the extent that the defendants argue that BCAC is the final authority under the Plan, BCAC's by-laws provide no authority for BCAC to resolve long-term disability disputes; rather, the By-Laws "only provide authority for BCAC review of denials involving short term disability, pensions, and sickness and accident disability payments." (Id.)

   Morley also asserts, assuming the Court finds no conflict in the grant of discretion, that she is entitled to de novo review because the Plan Administrator failed to properly exercise its discretion, as shown by "procedural irregularities and [the] magnitude of claims filing errors." (Id.)  Morley contends that BCAC "usurped" Gates's discretion to serve as the final review committee under the Plan by acting as the "sole arbiter" of her appeal. (Id. at 7-8.)  Morley also asserts that the defendants committed a "multitude" of administrative errors and demonstrations of bias towards her including, inter alia, (1) misinforming Morley of the proper time period in connection with her appeal rights, (2) characterizing the report of Morley's vocational capacity evaluator as "wordy BS," and (3) shredding materials generated during BCAC meetings. (Id. at 8-13.)

The defendants argue that the Avaya plan documents "contain a 'clear and unequivocal' expression of intent to confer discretion on the Plan Administrator or its delegate the BCAC." (Defs. Standard Br., at 9.)  The defendants point out that the Avaya SPD confers to Gates "unfettered decision-making authority as to benefit determinations."  (Def. Standard Opp. Br., at 4.) Also, the Avaya SPD establishes appeal procedures by which claimants may submit an appeal to Gates.  (Id. (citing Avaya SPD at 18).)  The defendants assert that the plan documents then provide claimants an "internal review process" by which LTD claim determinations by "Gates may be appealed by claimants to the Plan Administrator, Avaya, which has established an internal [BCAC] to hear and decide appeals of claim denials."  (Id. at 5.)

The defendants assert that the Avaya SPD provides that the Plan Administrator has "'the full discretionary authority and power to control and manage all aspects of the LTD Plan, . . . and to adopt rules for the administrator of the LTD Plan as they may deem appropriate in accordance with the terms of the LTD Plan and all applicable laws.'"  (Id. at 6 (quoting Avaya SPD).)  The defendants assert that the Plan Administrator, pursuant to this authority, delegated to BCAC the authority to review and make final decisions regarding appeals from LTD benefit determinations by Gates.  (Id. at 5.)  The defendants state that the Avaya LTD Plan provides that "BCAC shall be the final review committee

23

under the Plan, with the authority to determine conclusively for all parties any and all questions . . ..”  (Id. at 6-7.)  The defendants describe the BCAC appeal process as “provid[ing] an added measure of security for Plan Participants[, like Morley,] who contest the claims denials by Gates.”  (Id. at 5-6.)

The Court finds that the plan documents do not show a conflicting grant of discretion to justify applying a de novo standard of review to Morley’s claim for wrongful denial of LTD benefits.  In determining whether the Avaya LTD Plan grants clear discretion, the Court must examine the Plan language employing general principles of contract interpretation.  Firestone, 489 U.S. at 112.  The plan documents provide that the Plan Administrator retains full discretionary authority despite the initial grant of authority to Gates to administer LTD benefit claims.  Pursuant to this authority, the Plan Administrator has delegated BCAC as the final review committee and the final authority for overturning or affirming LTD claim denials made by Gates.  BCAC also has sole and complete discretionary authority for “the determination of all questions relating to the eligibility for participation and disability benefits.”  (Avaya LTD Plan, at AV 01287.)  Although Gates is the initial decision-maker for LTD benefit claims, BCAC is involved as a second level internal appeals process for claim denials.  The Plan Administrator, or BCAC as its delegatee, retains final authority

regarding LTD benefit claims.  Therefore, the Court will apply an arbitrary and capricious standard of review to Morley's wrongful denial of benefits claim.[3]

   **C.   Application of The <u>Pinto</u> Factors to Determine The Proper Level of Arbitrary And Capricious Review**

   The Court, "[i]n employing the sliding scale approach [to determine the appropriate level of arbitrary and capricious review, must] take into account the following factors in deciding the severity of the conflict: (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the fiduciary . . .." <u>Stratton</u>, 363 F.3d at 254.  As to the first factor, the defendants contend that "although Morley is an individual presumably with no experience in employee benefit administration, the record demonstrates that

_____

     [3] Morley's reliance on the BCAC by-laws and <u>Gritzer v. CBS, Inc.</u>, 275 F.3d 291 (3d Cir. 2002) in support of her argument for the application of <u>de novo</u> review is misplaced.  First, the BCAC by-laws are not part of the Avaya LTD Plan, and Morley has pointed to no language in any of the plan documents incorporating the by-laws.  Thus, the Court will not consider the by-laws to analyze this issue.  Second, as discussed above, procedural irregularities or bias is a consideration in determining the level of "heightened" review if the Court applies the arbitrary and capricious standard.  In <u>Gritzer</u>, the Third Circuit concluded that the deferential arbitrary and capricious standard was not applicable — irrespective of the plan language — where the Plan Administrator failed to make any decision during the pendency of the claim.  275 F.3d at 296.  Here, the facts are undisputed that (1) Gates informed Morley of the reason for the denial of benefits, and (2) BCAC communicated the grounds for affirming the denial.  As such, <u>Gritzer</u> is inapplicable to the facts here.

she was represented by experienced ERISA benefits counsel during the pendency of the appeals process." (Defs. Standard Br., at 14.)  Thus, they argue that "[n]o evidence exists to suggest that Morley was at any disadvantage in dealing with either Gates . . . or BCAC in pursuing her benefit claim by virtue of any comparative inexperience in ERISA matters." (Id.)  Concerning the second factor, the defendants assert that Morley provided Gates and Avaya with all of the information they used to address Morley's claim.  (Id.)

The defendants admit, for purposes of the third factor, that Gates is compensated by Avaya on a per claim basis.  (Anderson Aff.)  However, the defendants contend that the Court should apply only a slightly heightened arbitrary and capricious standard because of the similarity between the Avaya LTD Plan and the plan discussed by Stratton.  (Def. Standard Opp. Br., at 12-14.)  Finally, the defendants assert that Morley presents only one claim for LTD benefits and there is a lack of evidence that the value of the claim would significantly affect "a sizeable employer such as Avaya." (Id. at 13.)

Morley, although conceding that she was represented by counsel during the appeal period, claims that the first Pinto factor weighs in favor of heightening the standard of review because she was not so represented during the initial claim period before Gates.  As for the second factor, Morley contends

26

that she was unaware of some of the information that Gates and BCAC considered, including information provided by "Avaya's Dr. Aladdin Motia." (Pl. Standard Opp. Br., at 7.)  Morley argues that the defendants were also acting under a financial conflict of interest shown by various procedural irregularities and demonstrations of bias.  (Id.; Pl. Standard Br., at 14-15.) Concerning the fourth factor, Morley contends that Avaya's financial condition would potentially be significantly affected by any payment of LTD benefits to her because less than 30 participants out of a total of 8,194 receive benefits.  (Id.)

The Court finds that an analysis of the four Pinto factors justifies at least a slightly heightened arbitrary and capricious standard of review.  The second and fourth factors do not justify heightening the arbitrary and capricious standard.  Regarding information accessability, Morley has only generally alleged that she was denied information and only vaguely refers to "an example of the imbalance [of information] involves Avaya's Dr. Aladdin Motia." (Pl. Standard Opp. Br., at 7.)  The Court has found no other references to information that the defendants allegedly withheld from Morley.  As for the fourth factor, the record is unclear as to the potential effect of Morley's claim on Avaya's financial structure, although it appears highly unlikely that one claim would negatively impact such a large company.  Morley has also offered no evidence regarding the financial health or long

27

terms plans of Avaya that would undermine the "presumed desire to maintain employee satisfaction." Pinto, 214 F.3d at 392.

The first and third factors, however, justify at least a slightly heightened arbitrary and capricious standard of review. Concerning the first factor, there appears to have been a sophistication imbalance between the parties during the initial claims process, as Morley was only represented by counsel during the appeal of her benefits claim denial. Also, the third factor - the financial arrangement between Gates and Avaya — warrants a slight heightening of the arbitrary and capricious standard.

Arrangements in which an employer either (1) funds a plan and pays an independent third party to interpret the plan and make plan benefits determinations, or (2) establishes a plan, ensures its liquidity, and creates an internal benefits committee vested with the discretion to interpret the plan's terms and administer benefits, do not, in themselves, constitute a Firestone conflict of interest. Pinto, 214 F.3d at 383. Here, Avaya (1) established BCAC, an internal benefits committee to review, inter alia, LTD benefit claim denials, and (2) pays Gates on a per claim basis to serve as the Claims Administrator. Therefore, the Avaya LTD Plan could qualify as either of the two types of arrangements. As in Stratton, Morley has shown "no evidence that would give rise to an inference of conflict other than the fact that [Avaya] both funds and ultimately administers

28

its own plan after outsourcing the initial phases of
administration."  363 F.3d at 255.  Therefore, the Court will
heighten slightly the arbitrary and capricious standard to
"accommodate what appears to be a potential, even if negligible,
chance of conflict."  Id.

### D. Other Considerations to Potentially Justify Heightening The Arbitrary And Capricious Standard

Morley has also alleged a variety of procedural
irregularities and demonstrations of bias that she argues would
justify the Court heightening the arbitrary and capricious
standard.  A heightened arbitrary and capricious standard may be
appropriate if a plaintiff shows

> "demonstrated procedural irregularities, bias or
> unfairness in the review [by the plan administrator] of
> the claimant's application for benefits."  Kosiba, 384
> F.3d at 66; Vitale[v. Latrobe Area Hosp., 420 F.3d 278,
> 283 (3d Cir. 2005).]  This can come in the form of the
> either (a) plan administrator's "self-serving" use of one
> doctor's expertise; (b) inconsistent treatment of the
> same facts; and (c) when at a "crossroads," the plan
> administrator disfavors the claimant. Pinto, 214 F.3d at
> 393-94; see also Kosiba, 384 F.3d at 66.  However, the
> claimant bears the burden of proving procedural bias or
> bad faith by presenting the court with specific evidence
> of bias.  See Bill Gray Enters., Inc. Employee Health &
> Welfare Plan v. Gourley, 248 F.3d 206, 216 (3d Cir. 2001)
> ("Unless specific evidence of bias or bad-faith has been
> submitted, plans . . . are reviewed under the arbitrary
> and capricious standard["]); see also Goldstein v.
> Johnson & Johnson, 251 F.3d 433, 435-36 (3d Cir. 2001)
> (heightened arbitrary and capricious review is required
> when "the beneficiary has put fourth [sic] specific
> evidence of bias or bad faith in his or her particular
> case[]").

Michaux v. Bayer Corp., No. 05-1430, 2006 WL 1843123, at *6
(D.N.J. June 30, 2006).

Morley alleges that the defendants committed a variety of administrative errors and examples of bias including, <u>inter alia</u>, (1) misinforming Morley of the proper time period to appeal, (2) handwritten notes and comments on Morley's appeal letter and other documents, and (3) shredding materials generated during BCAC meetings.  (Pl. Standard Br., at 8-13.)  The defendants point out that Hershkowitz, a legal advisor to BCAC, testified at his deposition that he made the handwritten notes on Morley's appeal letter and on the responses to her exhibits prior to the BCAC hearing.  (Defs. Standard Opp. Br., at 15.)  The defendants also state that there is a dispute as to whether BCAC destroys copies of hearing items.  (<u>Id.</u> at 16.)  The Court finds that there are disputed issues of material fact regarding the possible procedural irregularities and potential bias by BCAC.  Therefore, the Court will defer a final determination as to the applicable level of "heightened" arbitrary and capricious standard of review until resolving these factual disputes at trial.

## III. Disclosure Penalties

### A.    Disclosure Requirements

ERISA requires the disclosure of particular information by a Plan Administrator.  Specifically, the Plan Administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining

30

agreement, trust agreement or contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  Section 1132(c)(1)(B) provides that

> [a]ny administrator . . . who fails or refuses to comply with a request for information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Id.

If an administrator does not comply with a request within the specified time, the Court has the discretion to assess a civil penalty.  See Romero v. Smithkline Beecham, 309 F.3d 113, 120 (3d Cir. 2002) (explaining that "[s]ection 502(c)(1), as noted, provides that a penalty may be imposed 'in the court's discretion' and that any such penalty may be in any amount 'up to $100 a day'").  "Appropriate factors to be considered in making these decisions include bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary."  Id. (citations and internal quotations omitted).  Although prejudice is a factor for consideration, it is not "a sine qua non to a valid claim under section 502(c)(1)."  Id.

31

**B.    The Defendants Complied With Disclosure Requirements**

The defendants contend that the Plan Administrator fully complied with ERISA's disclosure requirement.  Morley argues that she was entitled to, and did not receive, the (1) BCAC by-laws, and (2) service agreement between Gates and Avaya.[4]  The Court finds that Morley is not entitled to any penalties.

1.   BCAC by-laws

Morley asserts that she requested information that would have included the BCAC by-laws in her disclosure request.  (Pl. Disclosure Br., at 15.)  Morley argues that because the BCAC by-laws "essentially establish the governing body for resolving certain aspects of benefits requests, it is clearly a document 'under which the plan is established or operated.'" (Id. (quoting 29 U.S.C. § 1024(b)(4)).)  Morley indicates that she was prejudiced by not having a copy of the BCAC by-laws because she would have been made aware that BCAC

(1)   included a legal advisor, and any prepared materials by the legal advisor would have been discoverable;

(2)   has a formal medical advisor, and she would have had the opportunity to inquire as to the medical advisor's opinion of her condition; and

---

[4] Morley originally asserted that the Plan Administrator failed to disclose four documents: (1) a written statement indicating the length of her extension, (2) Medical Disability Advisor, by Presley Reed, M.D., (3) BCAC's by-laws, and (4) claims management guidelines.  Morley has withdrawn her claims as to the written statement indicating the length of the extension, and the Medical Disability Advisor.  (Pl. Disclosure Reply Br., at 1.)

(3)  had no authority pursuant to its by-laws to resolve
long-term disability claims.

(Id. at 16-18.)

The defendants claim that Morley's December 20, 2002
disclosure request did not include a request for the BCAC by-
laws.  (Defs. Disclosure Opp. Br., at 18.)  The defendants assert
that "Morley's request to produce documents establishing a policy
for processing requests for LTD benefits is not sufficiently
specific to describe" the BCAC by-laws.  (Id.)  Therefore, the
defendants argue that they had no duty to disclose the by-laws
under Section 1024(b)(4).  (Id.)

The defendants also point out that the BCAC by-laws are not
one of the specifically enumerated documents required to be
disclosed under Section 1024(b)(4).  (Id.)  The defendants assert
that the "BCAC By-laws do not address how the Avaya LTD Plan is
operated; rather, it sets forth the organization, membership and
voting rights of the BCAC Committee."  (Id. at 19.)  The
defendants further state that the BCAC by-laws do not (1) contain
any information that would have assisted Morley in perfecting her
appeal, (2) address a claimant's rights under the Avaya LTD Plan,
or (3) provide any information about the definition of
"disability" under the Plan.  (Id.)  The defendants also contend
that Morley's allegations of prejudice — the inability to request
materials prepared by or opinions of advisors to the BCAC — are
irrelevant to the defendants' duty to disclose documents to

33

assist her in perfecting her appeal under Section 1024(b)(4). (Id. at 19-20.)

The Court finds that Morley did not specifically request a copy of the BCAC by-laws in her disclosure request of December 20, 2002.  None of the 15 submitted requests, and in particular requests # 7 and 15 (specifically referred to by Morley in her brief), include an explicit request for the BCAC by-laws.  Morley has not identified how the BCAC by-laws would constitute a "schedule[], methodolog[y], procedure[], training material[], or any other document[] relied upon . . . in determining [her] entitlement to benefits under the Plan" as requested in request #7.  Moreover, Morley has not demonstrated that the by-laws constitute "any other documents which relate to any aspect of [her] entitlement to benefits, participation in the Plan, and/or the termination of her benefits[.]"

Even assuming for purposes of this motion and cross motion, that Morley had, in fact, included a request for the BCAC by-laws in her disclosure request, the BCAC by-laws is not a plan document or a document "under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  A document "under which the plan is established or operated" is not just "any document relating to a plan, but only formal documents that establish or govern the plan."  See Brown v. Am. Life Holdings, 190 F.3d 856, 861 (8th Cir. 1999) (agreeing with the definitions posited by the

Fourth, Seventh, and Ninth Circuits as to documents "under which
the plan is established or operated").  "This is not to say, of
course, that companies have a permanent privilege against
disclosing other documents.  It means only that the affirmative
obligation to disclose materials under [§ 1024(b)(4)], punishable
by [statutory] penalties, extends only to a defined set of
documents." Ames v. Am. Nat'l Can Co., 170 F.3d 751, 759 (7th
Cir. 1999).  Morley's contention that the by-laws "specify
procedures and authority for the resolution of disability claims"
is without merit.  The by-laws contain no provisions describing
or providing the procedure for the resolution of LTD benefit
claims, or otherwise address how the Avaya LTD Plan is operated.

     Morley has also failed to show bad faith or intentional
conduct on the part of the Plan Administrator or prejudice as a
result of not having the BCAC by-laws.  Morley's requests for
disclosures do not expressly include a request for the BCAC by-
laws, and the other requests are not sufficiently specific to put
the defendants on notice that she was seeking them.  Thus, Morley
has failed to show bad faith or intentional conduct on the part
of the Plan Administrator in not turning over the by-laws.
Concerning prejudice, Morley's allegation that she was denied
access to potential materials prepared by BCAC's "legal advisor"
or "medical advisor" is immaterial.  Morley was appealing Gates's
decision to deny her claim for LTD benefits to BCAC itself.  At

35

the time she submitted her request for disclosures, Morley had not filed her appeal to BCAC from Gates's decision.  Although Morley has attached a copy of her February 11, 2003 appeal letter with notations apparently scribed onto it by Hershkowitz, she has not shown that these notations occurred before Morley filed her appeal and her case came before BCAC.  This rationale applies equally to any opinions of BCAC's medical advisor, who would not have been presented with making a decision as to her disability status until Morley submitted her appeal from Gates's determination to BCAC.

Morley's argument that she was prejudiced by later discovering that BCAC allegedly had no authority to resolve long-term disability claims is also without merit.  During oral argument, Morley's counsel indicated that if he had this information, he would have dealt with Gates instead of Avaya or BCAC.  However, BCAC was the entity that handled Morley's appeal, so Morley filed her appeal with the correct entity.  Morley also asserts that the by-laws would have provided her with "the opportunity to determine the LTD Plan's authority to hear additional, voluntary appeals."  Morley has not identified any language in the by-laws that would have provided her with such an opportunity.  For all of these reasons, Morley has failed to demonstrate that she was prejudiced by not having a copy of the BCAC by-laws.

2.   Contract between Gates and Avaya

Morley also claims that the Plan Administrator failed to disclose a "Professional Services Contract" (the "Contract") between the Avaya LTD Plan and Gates.  (Pl. Disclosure Br., at 18.)  Morley asserts that she included a disclosure demand for the Contract within the "fifteen (15) itemized items including an omnibus request."  (Id.)  Morley contends that if she had the Contract, she would have:

(1)   "been on notice that the Avaya LTD Plan integrates issues relating to long-term and short-term disability and Workers' Compensation [and] crafted her appeal document such that her entitlement to short term disability benefits was discussed, analyzed, and emphasized[;]"

(2)   been able to challenge Gates's failure to secure a vocational assessment and its own independent medical examination;

(3)   argued that "cost factors drive the decisions of those who are otherwise fiduciaries[;]"

(4)   show that Gates relied upon the incorrect standard of disability in rejecting Morley's appeal; and

(5)   request information about an "action plan" regarding her workers' compensation case.

(Id. at 18-21.)

The defendants contend that, although Morley asserts that she was entitled to a copy of the "Claims Management Guidelines," she has failed to show that "any such Claims Management Guidelines for the application of the LTD plan existed."  (Defs. Disclosure Opp. Br., at 10.)  The defendants point out that Lori

37

Kools and Gail Foley, two Gates employees, did not testify at
their deposition that Gates uses any claims management guidelines
generally or that any guidelines were used in processing Morley's
claim.  (Id. at 10-11.)  The defendants assert that the Contract
does not constitute a "claim management guideline" because it
merely sets forth "Gates'[s] obligations to Avaya in the
administration of long term disability benefits, including the
type and timeliness of reporting; working with other providers in
handling claims; logistics for training and human resources,
etc."  (Id. at 11.)  The Contract also includes provisions
regarding Gates's payments from Avaya.  The defendants argue that
the Contract does not include any "'guidelines' for how to handle
LTD claims, but rather constitutes the agreement between the Plan
and the Claims Administrator as to each party's respective duties
and obligations."  (Id. at 11-12.)

The Court finds that Morley did not specifically request a
copy of the Contract or claims management guidelines in her
disclosure request of December 20, 2002.  None of the 15 requests
include a request for the Contract or any claims management
guidelines by explicit reference.  Morley has generally contended
that the Contract, at a minimum, would fall into the "omnibus
request," or request #15.  Morley has not demonstrated that the
Contract constitutes "any other documents which relate to any
aspect of [her] entitlement to benefits, participation in the

38

Plan, and/or the termination of her benefits[.]"  Also, Morley
has not shown that the Contract is a "claims management
guideline."  The Contract does not include procedures or
"guidelines" for handling LTD benefit claims.

Even assuming again that Morley included a request for the
Contract (or claims management guidelines) in her disclosure
request, it is not a plan document or a document "under which the
plan is established or operated."  29 U.S.C. § 1024(b)(4).
Morley provides no case law to support her assertion that "claims
management guidelines" are included in the group of required
disclosures under Section 1024(b)(4).  To the contrary, claims
management guidelines have been determined not to fall within the
scope of Section 1024(b)(4).  See, e.g., Doe v. Travelers Ins.
Co., 167 F.3d 53, 60 (1st Cir. 1999) (concluding that defendant's
"mental health guidelines" that were part of basis for decision
to deny benefits were not "one of the 'other instruments'
[required to be produced under Section 1024(b)(4)]"); Tutolo v.
Indep. Blue Cross, No. 98-5928, 1999 WL 274975, at *2 (E.D. Pa.
May 5, 1999) (determining that "documents detailing Defendant's
appellate hearing procedures and describing the criteria
Defendant used when deciding to deny approval for the ablation
procedure . . . fall outside of what § 1024(b)(4) requires").
Further, the Contract itself does not constitute a legal document
that (1) describes the terms of the plan or its financial status,
or (2) otherwise restricts or governs the Plan's operation.

39

Morley has also failed to show bad faith or intentional conduct on the part of the administrator, or prejudice as a result of not having the Contract.  Similar to her alleged request for the BCAC by-laws, Morley's disclosure requests do not expressly include a request for the Contract.  Moreover, the other requests are not sufficiently specific to put the defendants on notice that she was seeking a copy of the Contract. Thus, Morley has failed to show bad faith or intentional conduct on the part of the administrator in not disclosing the Contract.

Morley's allegations of prejudice also are without merit. Morley alleges that, knowing that Gates handled workers' compensation and short-term disability claims, she would have "crafted" her appeal to focus more on Morley's eligibility and receipt of short-term disability benefits.  However, as explicitly stated in the Plan documents and, recognized by Morley in her appeal letter, the standards for eligibility for short-term disability and long-term disability benefits are not identical.  Thus, Morley's eligibility and receipt of short-term disability benefits would not have been determinative to Gates's analysis of Morley's eligibility for LTD benefits.  Morley has not identified how her short-term disability benefits eligibility or receipt of benefits would have altered her plan on appeal.  In fact, the April 24, 2003 letter from BCAC denying Morley's appeal states that "[e]ligibility for LTD differs from that of STD.  An

40

employee must be unable to do any job for **any** employer to qualify for LTD, whereas for STD, the employee is totally disabled from performing the essential functions of his/her job at Avaya."   (1-27-06 Vance Certif., at Ex. D (emphasis in original).)

Morley also asserts that she could have challenged the Plan's failure to secure a vocational assessment or independent medical examination.  (Pl. Disclosure Br., at 19.)  However, Morley cites to nothing in the plan documents that would have required Gates to seek a vocational assessment or independent medical examination during her disability assessment.  Also, the Contract's language requiring Gates to perform a vocational assessment or independent medical examination as required by Avaya is not specifically included in the Contract under the section discussing's Gates's relationship with Avaya as to the LTD Plan.

The Court further finds that Morley has not shown that she was prejudiced by (1) not knowing Gates's financial arrangement with Avaya, (2) the allegedly different definitions of disability in the Contract and in the Avaya Plan, and (3) the "action plan" in workers' compensation.  Morley's only assertion about the action plan is that, if she knew about it, she could have requested the information from the defendants.  Because Morley's claim was denied, any potential offsets were not at issue at the time Morley filed her appeal to BCAC.  Also, although Morley makes a conclusory allegation that Gates used the wrong standard

of disability in denying her claim, there is no indication from
the August 13, 2002 letter from Gail M. Foley, that Gates relied
upon the wrong standard.  Furthermore, Morley does not allege how
the payment relationship between Gates and Avaya would have
altered the procedure or substance of her appeal, and she may
argue such potential bias at trial.

**IV.  LTD Benefits Offsets**

The defendants contend that any potential award of LTD
benefits should be offset — under the terms of the Avaya LTD Plan
— by Morley's receipt of (1) social security disability benefits,
(2) workers' compensation benefits, and (3) monies paid as part
of an employment discrimination lawsuit.  (Defs. Offset Br., at 1.)

The Avaya SPD provides that an employee's "eligible pay"
consists of the employee's "basic pay rate as determined from the
payroll records of the Company and [his or her] target
incentive."  (Avaya SPD, at 7; Pretrial Ord., at 7.)  Morley's
base salary was $73,800.  (Pretrial Ord., at 7.)  Morley's
"target incentive" ("STIP"), was 10% at her management level as
of 2002, or $7,380.  (Id.)  Thus, Morley's eligible pay for
purposes of calculating LTD benefits is $81,180.  (Id.)

The Avaya SPD provides that LTD benefits

are paid in combination with other sources of disability
income so that your total LTD income from all sources
would equal 60% of your LTD **eligible total pay.**

\* \* \*

42

### *Other Sources of Disability Income*

The LTD Plan is designed to work with other sources of disability income to provide your total disability income.  The LTD Plan looks at all of your sources of disability income (except disability income from individual insurance you have purchased), and makes up the difference after benefits which you are eligible to receive from other sources are determined, such as:

•    Primary Social Security benefits (payable to you),
•    Workers' Compensation or any similar benefits,
•    Any state or federal disability benefits except veteran's benefits, and
•    Any Avaya Inc. pension benefits you may be eligible to receive at the time your LTD benefits begin.

(Avaya SPD, at 9 (emphasis in original).)

Before any potential offsets would be applied, 60% of Morley's base ($81,180) equals $48,708.  (Pretrial Ord., at 7.) Thus, if Morley is entitled to LTD benefits, then the Avaya LTD Plan would offset other sources of disability income from $48,708 to determine the net benefits payable to her.

Morley applied for and received Social Security Disability ("SSD") benefits.  (Morley Tr., at 154.)  Morley received an initial retroactive SSD lump-sum award of $12,574.50 in or about January 2004.  (Pretrial Ord., at 7.)  Morley then received $1,014 per month in SSD benefits from January 2004 until August 2004.  (Id.)  Morley's SSD monthly benefit was reduced to $938 per month in August 2004.  (Id.)  Morley had received a total of $35,694.50 in SSD benefits as of December 2005.  (Id. at 7-8.)

Morley also received temporary total disability workers' compensation benefits from Avaya, as administered by Gates, in

43

the amount of $591 per week from February 15, 2002 to November 30, 2005, totaling $117,018.  (<u>Id.</u> at 8.)[5]  No determination has been made that the plaintiff is permanently physically impaired for the purposes of workers' compensation benefits.  (<u>Id.</u>)  In addition, Morley settled a disability discrimination lawsuit filed against Avaya for approximately $12,000.  (Defs. Offset Br., at 6; Pl. Offset Br., at 5.)

### A.   SSD Benefits

The defendants argue that any potential award of LTD benefits should be offset by the monies Morley received as SSD benefits.  Morley has conceded that the defendants are entitled to an offset against the full amount of her SSD benefits.  (Pl. Offset Opp. Br., at 2.)

### B.   Workers' Compensation

The defendants assert that any award of LTD benefits under the Avaya LTD Plan should be offset by the monies Morley received as temporary disability workers' compensation benefits.  (Defs. Offset Br., at 10.)  The defendants note that the Avaya SPD specifically provides for an offset of other sources of disability income, including, among other things, workers' compensation.  (<u>Id.</u> at 10.)  Morley, on the other hand, contends that not all of her workers' compensation benefits are in the

---

[5] Morley still receives temporary workers' compensation benefits.  (Pretrial Ord., at 8.)

form of disability income and, as such, the defendants are not entitled to a complete offset.  The Court finds that the Avaya LTD Plan provides that all of Morley's temporary disability workers' compensation benefits would be offset against any potential award of LTD benefits.

An ERISA plan is interpreted in accordance with "the provisions of the [plan] . . . in light of all the circumstances."  Firestone, 489 U.S. at 112; see In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996) ("The strongest external sign of agreement between contracting parties is the words they use in their written contract.").  If the Court finds that the language of the plan is not ambiguous on its face, the provisions of the agreement should be enforced.  In re Unisys, 97 F.3d at 715.

The Court finds that the Avaya SPD unambiguously provides that workers' compensation benefits in the form of disability income are offset from any LTD benefit award.  The temporary total disability benefits that Morley has been receiving are one of the three types of benefits that are available under the New Jersey Workers' Compensation Act ("NJWCA").  N.J.S.A. § 34:15-12. The temporary total disability benefits under the NJWCA are based on the claimant's wages.  Id.  An employee is entitled to 70% of the employee's weekly wages received at the time of the injury, subject to a maximum compensation of 75% of the average weekly wages earned by all employees covered by the NJWCA.  Id. at §

45

34:15-12a.  Temporary disability benefits are in lieu of weekly wages.  Young v. W. Elec. Co., 475 A.2d 544, 547 (N.J. 1984). Thus, an employee that has not lost wages by reason of a temporary disability is not entitled to temporary disability payments under the NJWCA.  Outland v. Monmouth-Ocean Educ. Serv. Comm'n, 713 A.2d 460, 464 (N.J. 1998).  The parties do not dispute that Morley has received and continues to receive temporary total disability benefits under the NJWCA.  Therefore, the Court finds that the monies Morley has received and continues to receive as temporary total disability benefits — which are in lieu of weekly wages — constitute "workers' compensation" as disability income under the Avaya LTD Plan.[6]

### C.  Settlement Proceeds

The defendants claim that they are entitled to an offset for some monies Morley received as part of a settlement of her New Jersey Law Against Discrimination ("NJLAD") claim against Avaya, Inc. in New Jersey state court.  (Defs. Offset Br., at 14.)  The defendants point out that the terms of the settlement agreement

---

[6] No determination has been made to the extent of Morley's possible entitlement to permanent disability benefits under the NJWCA.  Permanent disability benefits compensate for the employee's physical impairment to carry on the ordinary pursuits of life in addition to loss of income.  Olivero v. N.J. Mfrs. Ins. Co., 547 A.2d 710, 717 (N.J. App. Div. 1988).  It is premature to consider whether any monies paid for permanent disability benefits under the NJWCA should be offset against a potential award of LTD benefits because Morley has not been determined eligible to receive such benefits.

"require [Morley] to dismiss her state court action in exchange
for: (a) payment in the amount of $12,487.22 less standard
deductions and withholdings required by law 'for alleged lost
wages . . .'; (b) payment of $12,487.72 for 'alleged emotional
distress/pain and suffering . . .'; [and] (c) payment in the
amount of $12,524.56 for attorneys' fees and costs."  (<u>Id.</u> at
15.)  The defendants argue that the amount Morley received for
lost wages should be offset by the amount of any LTD benefit
award because she would "effectively receive a double recovery."
(<u>Id.</u> at 16.)

Morley argues that the Avaya LTD Plan contains no language
allowing the offset against a state court settlement.  (Pl.
Offset Opp. Br., at 5.)  Plaintiff also asserts that the
defendants have cited to no specific language in the plan
permitting them to offset the proceeds of Morley's settlement.
(<u>Id.</u>)  The Court finds that any amount of the settlement proceeds
that Morley received for "lost wages" does not offset against any
potential award of LTD benefits.

The defendants concede that the Avaya SPD does not include
in its offset provision the receipt of income as a result of
litigation.  (Defs. Offset Reply Br., at 9.)  The language in the
Avaya SPD providing for an offset of "other sources of disability
income" does not expressly include monies received through
litigation settlements.  There was nothing in the Avaya LTD Plan

47

or other plan documents that would have notified Morley that settlement proceeds could offset any potential LTD benefit award.

**V.   Breach of Fiduciary Duty Claim**

The defendants argue that Morley cannot maintain her breach of fiduciary duty claim in Count II of the complaint because she is only seeking relief that is "duplicative of her demand for damages for the alleged wrongful denial of benefits." (Def. Fiduciary Br., at 3.)  The defendants also contend that (1) the Avaya LTD Plan cannot be liable for breach of fiduciary duty because it is not a "fiduciary" under ERISA, and (2) if judgment is entered for the defendants on Morley's breach of fiduciary duty claim, the Court should dismiss her other claims against Gates and BCAC for wrongful denial of benefits or disclosure penalties. (Id. at 11.)

**A.   Potential Liability of the Avaya LTD Plan**

The defendants contend that the Avaya LTD Plan cannot be liable for breach of fiduciary duty because it is not a "fiduciary" under ERISA. (Def. Fiduciary Br., at 9.)  Morley has withdrawn her request for relief for alleged fiduciary breaches against the Avaya LTD Plan.

**B.   Viability of Morley's Breach of Fiduciary Claim Against the Remaining Defendants**

The defendants argue that Morley cannot maintain her breach of fiduciary duty claim in Count II of the complaint because she is only seeking relief that is "duplicative of her demand for

48

damages for the alleged wrongful denial of benefits."  (Def.
Fiduciary Br., at 3.)  Morley contends that she is not seeking
duplicative relief; rather, she seeks an equitable declaration in
her claim that represents additional relief available to her
because of the defendants' fiduciary breaches.  Specifically,
Morley asserts that she is claiming as additional relief (1)
protection from future claim terminations, and (2) interest on
delayed benefits.  The Court finds that the alleged "additional
relief" sought by Morley is available as relief for her wrongful
denial of benefits claim.

ERISA states that a "fiduciary shall discharge his duties
with respect to a plan solely in the interest of the participants
and beneficiaries."  29 U.S.C. § 1104(a)(1).  An individual
allegedly harmed by a breach of the fiduciary duty described in
Section 1104(a)(1) may only seek the relief allowed by Section
1132(a)(3).  <u>Vanity Corp. v. Howe</u>, 516 U.S. 489, 507 (1996).[7]
Section 1132(a)(3) provides that a civil action may be brought
"by a participant, beneficiary or fiduciary (A) to enjoin any act
or practice which violates any provision of this subchapter (B)
to obtain other appropriate equitable relief (i) to redress such
violations[,] or (ii) to enforce any provisions of this
subchapter."  <u>Id.</u>  Thus, the relief available under Section

---

[7] As an individual, Morley could not bring a breach of
fiduciary duty claim under Section 1109.  <u>Mass. Mut. Life Ins.
Co. v. Russell</u>, 473 U.S. 134, 144 (1985).

1132(a)(3)(B) is limited to "appropriate equitable relief," of
which "where Congress elsewhere provided adequate relief for a
beneficiary's injury, there will likely be no need for further
equitable relief, in which case such relief normally would not be
'appropriate.'" Vanity Corp., 516 U.S. at 515; see McCoy v. Bd.
of Trustees of Laborers' Int'l Union Loc. No. 222, 188 F.Supp.2d
461, 472 n.10 (D.N.J. 2002) (granting defendants' motion for
summary judgment on breach of fiduciary duty claims and
explaining that plaintiff "cannot receive anything in his breach
of fiduciary claims that [the court has] not already awarded him
under [the plaintiff's] claim for benefits.  Equitable relief for
a breach of fiduciary duty claim is not appropriate in that
circumstance.").

     Section 1132(a)(1)(B) provides that "[a] civil action may be
brought . . . by a participant or beneficiary . . . to recover
benefits due to him under the terms of his plan, to enforce his
rights under the terms of the plan, or to clarify his rights to
future benefits under the terms of the plan." Id.  Morley claims
that she is seeking equitable relief in the form of protection
from future claim terminations.  (Pl. Fiduciary Opp. Br., at 7.)
However, this form of relief does not constitute "additional
relief" otherwise not provided for in Section 1132(a)(1)(B).
Instead, this type of relief is specifically provided for and
contemplated by the language in Section 1132(a)(1)(B).

Morley has also argued that her claim for prejudgment interest on delayed benefits constitutes "appropriate equitable relief" under Section 1132(a)(3). (Id. at 7-8.)  Morley's reliance on Fotta v. UMWA Health & Retirement Fund, 165 F.3d 209, 213 (3d Cir. 1998), in support of this contention is misplaced. The Fotta court stated that Section 1132(a)(3)(B) — "allowing a beneficiary to sue for 'other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan' [—] is the appropriate vehicle for such a cause of action." Id.  However, the Third Circuit later clarified its holding in Fotta by explaining that "an ERISA plaintiff who prevails under [Section 1132(a)(1)(B)] in seeking an award of benefits may request prejudgment interest under that section as part of his or her benefits award."  Skretvedt v. E.I. duPont de Nemours, 372 F.3d 193, 208 (3d Cir. 2004).[8]  Therefore, Morley can seek prejudgment interest if she prevails on her claim for wrongful denial of benefits.  Accordingly, Morley has not claimed any additional relief under her breach of fiduciary duty claim that she is not otherwise potentially entitled to if she prevails on her wrongful denial of benefits claim.

---

[8] The court went on to say that "[t]o the extent that Fotta II discusses a successful ERISA plaintiff needing to use § [1132](a)(3)(B) to 'sue for interest,' in the context of deciding whether a plaintiff who had not received an underlying award of benefits under § [1132](a)(1)(B) could still sue for interest on the delayed payment of benefits under § [1132](a)(3)(B), such statements are dicta."  Id. at 208 n.20.

C.    **Claims Against Gates and BCAC**

The defendants assert that if judgment is entered for the defendants on Morley's breach of fiduciary duty claim, the Court should dismiss her other claims against Gates and BCAC.  The defendants claim that the "only entity which can be liable for the alleged wrongful denial of LTD benefits is the Plan itself." (Defs. Fiduciary Br., at 11.)  The defendants also argue that the only named defendant that could be held liable for disclosure penalties under Section 1132(c) is the Plan Administrator.  (Id.) Morley argues that her wrongful denial of benefits claim is viable against BCAC and Gates because (1) Gates participated in processing claimants' payments, and (2) BCAC is "merely an instrumentality of the Plan Administrator."  (Pl. Fiduciary Opp. Br., at 8-9.)  Morley also, although withdrawing her disclosure penalty claim against Gates, asserts that BCAC is a proper defendant for purposes of that claim.  (Id. at 9.)

"A plan participant or beneficiary may sue to recover benefits due pursuant to § 1132(a)(1)(B)[; however, [t]he only proper party defendants in such an action . . . would be the plan and plan administrator or trustee in his capacity as such." DeFelice v. Daspin, No. 01-1760, 2002 WL 1373759, at *6 (E.D. Pa. June 25, 2002).  Although the Plan Administrator has delegated BCAC as "the final review committee under the Plan," BCAC is, as Morley admits, "merely an instrumentality of the Plan

Administrator."  Thus, only the Plan Administrator, Avaya, and the Avaya LTD Plan are proper defendants for Morley's wrongful denial of benefits claim.[9]

## VI.  Scope of the Administrative Record

### A.    Breadth of the Administrative Record

Morley contends that the administrative record should contain all "materials submitted to the Plan Administrator for consideration which [she] had an opportunity to rebut.  These items would include all materials submitted by . . . Morley to the Plan Administrator from December[] 2001 [for BCAC's first review] through [the commencement of the litigation on] January 29, 2004."  (Pl. Admin. Rec. Br., at 4.)  Thus, Morley argues that the Court should exclude from the administrative record all documents included in the second BCAC review.  (Pl. Admin. Rec. Opp. Br., at 2-5; Pl. Admin. Rec. Reply Br., at 2-5.)  The defendants contend that the administrative record either contains "all of the documents reviewed by both BCAC Committees (through December 10, 2004), or should only include the information before the first BCAC (April[] 2003), from whose denial plaintiff filed her lawsuit."  (Def. Admin. Rec. Br., at 4-5.)

---

[9] The Court, in granting the defendants' motion for summary judgment on Morley's disclosure penalties, need not address the additional arguments concerning the proper defendants on her disclosure claim.  However, the Court notes that for the same reasons mentioned above, BCAC would not be a proper defendant as it is merely an instrumentality of the Plan Administrator, Avaya.

"Under the arbitrary and capricious standard of review, the 'whole' record consists of that evidence that was before the administrator when he made the decision being reviewed." <u>Mitchell v. Eastman Kodak</u>, 113 F.3d 433, 440 (3d Cir. 1997) (citations omitted).  BCAC denied Morley's appeal through a letter dated April 24, 2003, and approximately 8 months after BCAC denied her appeal, Morley's counsel sent a letter addressed to "Shelley Anderson[,] Secretary, Avaya [BCAC]" dated January 22, 2004, (1) stating that Morley's application for SSD benefits had been approved, (2) enclosing various records regarding her successful SSD application (including a copy of her award check), and (3) requesting that BCAC place the enclosed items into Morley's LTD administrative record.  (3-27-06 Vance Certif., at ¶ 4, Ex. C, 1-22-04 Vance Letter to BCAC.)  Seven days later, on January 29, 2004, Morley brought this action.  (Dkt. entry no. 1.)  Avaya sent Morley a letter on August 20, 2004, advising her that BCAC would meet on September 17, 2004, to determine whether to open her claim in light of its receipt of additional medical documentation from her.  (Pretrial Ord., at 5-6.)  BCAC convened on September 17, 2004, and voted to reopen Morley's claim.  (<u>Id.</u> at 6.)

The Court finds, as Morley's counsel conceded at oral argument, that Morley continued to pursue administrative remedies through BCAC and Avaya even after bringing this action.  (Dkt.

54

entry no. 53.)  Morley's counsel submitted medical documentation
to BCAC in April and May 2003, and submitted Morley's entire
successful social security application to BCAC just seven days
before filing the complaint.  Morley contends that the second
BCAC review was a "sham instituted only for litigation purposes"
and "without any authority."  (Pl. Admin. Rec. Reply Br., at 2-5;
Pl. Admin. Rec. Opp. Br., at 3.)  However, BCAC did conduct a
second review in which Morley participated, and which presumably
could have resulted in an award of LTD benefits to her.  Also,
BCAC's correspondence to Morley indicates that it determined that
it would possibly reopen her claim based on the additional
medical documentation that she provided.  The parties' dispute
over the propriety or rationale for the second BCAC review is a
disputed issue of fact that cannot be resolved on a motion for
summary judgment.  Therefore, as BCAC did conduct two reviews of
Morley's LTD benefit claim, the Court finds that the
administrative record shall consist of those documents, except
for those specifically excluded below, reviewed by both BCAC
Committees (or until the second denial on December 10, 2004).

**B.   Specific Exclusions**

1.   Dr. Motia's Records

Morley contends that "[a]ny guidance, comments, or
information supplied by the BCAC Medical Advisor, Alladin Motia,
MD, should not be included in the administrative record."  (Pl.

Admin. Rec. Br., at 4.)  However, Morley fails to identify a single document containing "guidance, comments, or information supplied" by Dr. Motia.  Therefore, without listing any documents for the Court to exclude, the Court cannot exclude any such documents from the administrative record.

      2.   Dr. Basinger's report

Morley asserts that Dr. Basinger's report should be excluded because it was not presented to her for rebuttal before bringing this action.  Avaya sent Morley a letter dated November 8, 2004, enclosing a copy of Dr. Basinger's report and advising that she had approximately 15 days to respond to the report.  (3-20-06 Connelly Cert., at Ex. A.)  The Court finds that Morley was presented with a copy of this report, and BCAC considered it in its second review of Morley's claim for LTD benefits.  Therefore, the Court will include Dr. Basinger's report in the administrative record.

      3.   Records relating to Morley's state court litigation against Avaya

The parties agree that documents concerning Morley's state court litigation against Avaya should not be included in the administrative record.  (Def. Admin. Rec. Opp. Br., at 8; Pl. Admin. Rec. Br., at 4-5.)  As such, the Court will exclude these documents from inclusion in the administrative record.

4.   Morley's social security award

Morley contends that the her social security disability award should be included in the administrative record.  Because the Court has determined that the administrative record would include documents presented to Avaya until December 10, 2004, the defendants concede that the social security award should be included in the administrative record.  As such, the social security award is included as part of the administrative record.

5.   Proposed Exhibit 11 - Picture of nuts and bolts

The defendants argue that this document, a "photograph of the nuts and bolts apparatus which was apparently installed in [Morley's] back" should be excluded from the administrative record because it was not provided to BCAC for review.  (Def. Admin. Rec. Br., at 9.)  Morley asserts that this material was available to BCAC "well prior to the filing of" her lawsuit and prior to BCAC's December 2004 meeting.  (Pl. Admin. Rec. Opp. Br., at 7.)  As there is a genuine disputed issue as to whether this document was provided to BCAC for its review, the Court will defer ruling on this document's inclusion in the administrative record.

6.   Documents related to Morley's disclosure requests

The defendants claim that proposed exhibits 4, 14, 35-37, 47-48, 98-99, and 134-135, should not be part of the administrative record for purposes of Morley's wrongful denial of

LTD benefits claim because the documents relate solely to
Morley's disclosure penalties claim.  (Defs. Admin. Rec. Br., at
5-6 & n.4.)  These documents are: (1) BCAC's initial disclosure
response by Shelley Anderson (exhibit 4); (2) Morley's December
20, 2002 disclosure request to BCAC (exhibit 14); (3) Morley's
December 20, 2002 disclosure request to BCAC with handwritten
notations (exhibit 35); (4) correspondence from Vance to BCAC,
dated February 3, 2003, regarding the appellate deadline
extension (exhibit 36); (5) correspondence from Vance to BCAC
counsel, dated January 31, 2003, regarding disclosure issues,
with handwritten notations (exhibit 37); (6) by-laws for
operation of BCAC (exhibit 47); (7) the professional services
contract between Avaya and Gates (exhibit 48); (8) "Opinion 79-
82A" (exhibit 98); (9) The Medical Disability Advisor (exhibit
99); (10) "Form 550 Annual Return/Report of Employee Benefit Plan
2001" (exhibit 134); and (11) Application for extension of time
to file certain employee plan returns (exhibit 135).  (Pretrial
Ord., at 28-36.)  Morley has not specifically responded to the
defendants' arguments regarding the inclusion of these documents.
The Court finds that only proposed exhibits 4 and 14 appear on
their face to be specifically part of Morley's disclosure
penalties claim.  The defendants have not shown that the
remaining documents are completely unrelated to Morley's wrongful
denial of benefits claim.  As such, the Court will defer

58

determining whether those documents should be included until trial.

       7.   Medical reports allegedly not reviewed by BCAC

The defendants assert that (1) proposed exhibit 67, an August 11, 2003 report from Karen Schultz, PT, (2) proposed exhibit 77, a May 17, 2004 report from Dr. Rempson, and (3) proposed exhibit 80, an August 9, 2004 report from Dr. Knightly should be excluded from inclusion in the administrative record because there is no evidence that they were presented to BCAC. (Defs. Admin. Rec. Br., at 9.)  Morley has not responded to these contentions.  The Court cannot find any evidence of record indicating that these documents were produced to BCAC for consideration.  Therefore, these documents are excluded from the administrative record.

       8.  Avaya financial documents

The defendants assert that proposed exhibits 153 through 161, including various financial documents — SEC Form 10-Ks, and Avaya "Stock Quote & History" — were not in the administrative record during either review of Morley's claim for LTD benefits. (Defs. Admin. Rec. Br., at 9.)  Morley has not addressed the defendants' arguments for excluding these documents in her briefs.  The Court will exclude these documents from the administrative record.

9.    Other documents specifically requested to be
      included by Morley

Morley asserts that the (1) January 23, 2002 operative
report completed by Dr. Knightly, (2) January 30, 2002 job
description prepared by James Bird of Avaya, (3) March 11, 2004
report of Allyson K. Hurley, DDS, and (4) February 10, 2003
medical report by Donald H. Frank, MD, should be included in the
administrative record.   The defendants, based in part on the
Court's determination as to the breadth of the administrative
record, concede that these documents should be included in the
administrative record.   Accordingly, these documents are included
in the administrative record.

10.   Documents relating to defenses

The defendants contend that exhibits 132, 133, 141, 142,
144, and 147 through 152, support their various defenses and, as
such, should be excluded from the administrative record.[10]   These
exhibits include: (1) Morley's complaint filed in state court
against Avaya (exhibit 132); (2) the complaint in this action
(exhibit 133); (3) the settlement agreement and general release

---

[10] The defendants' brief states that exhibits 145 and 146
are answers to discovery.  (Defs. Admin. Rec. Br., at 5-6 & n.4.)
The Court notes that exhibit 145 is described as an "Appointment
of Plan Administrator for Avaya Inc.'s Health and Welfare Plans
w/ Exhibit A," and exhibit 146 is listed as "Case Notes of Gates
McDonald." (Pretrial Ord., at 37.)  Therefore, these documents
do not appear to constitute "answers to discovery" and the Court
has not considered them as being included in the defendants'
request.

for the state court action (exhibit 141); (4) print-out of

payments of workers' compensation benefits (exhibit 142); (5)

Morley's W2 statements (exhibit 144); (6) Morley's answers to

interrogatories and requests for admissions (exhibits 147-150);

and (7) the defendants answers to interrogatories and requests

for admissions (exhibits 151-152).  Morley has not argued that

these documents were part of the administrative record before

Gates or BCAC or that they should be included in the

administrative record before the Court.  The Court will exclude

these documents from the administrative record.

**CONCLUSION**

The Avaya LTD Plan does not provide conflicting and

unambiguous grants of discretion regarding employee plan

eligibility between Gates and the Plan Administrator.  The Court

will (1) deny the part of the cross motion to determine the

standard of review insofar as it seeks to have the Court apply a

de novo standard, and (2) grant the part of the motion to

determine the standard of review seeking to have the Court apply

an arbitrary and capricious standard of review.  The Court finds

that there are disputed issues of fact that would possibly

justify heightening the applicable arbitrary and capricious

standard of review.  Therefore, the Court will (1) deny without

prejudice the part of the motion seeking to have the Court apply

the arbitrary and capricious standard of review without

heightened scrutiny, and (2) deny without prejudice the part of the cross motion insofar as it seeks to have the Court apply a heightened arbitrary and capricious standard of review.

Morley has failed to demonstrate that she is entitled to disclosure penalties for the Plan Administrator's failure to provide her with a copy of the BCAC by-laws or the services contract between Gates and Avaya.  The defendants have shown that Morley is not entitled to disclosure penalties for the Plan Administrator's failure to turn over those documents because they are not the type of documents required for disclosure under Section 1024(b)(4).  The Court will (1) grant the motion for summary judgment on the disclosure claim, and (2) deny Morley's cross motion seeking an award of disclosure penalties.

The Avaya LTD Plan provides for an offset of monies Morley received as part of her social security disability award and temporary workers' compensation.  However, the Plan does not provide for an offset of monies Morley received in her settlement in the state court action against Avaya.  Also, Morley has not received a determination as to her eligibility for permanent workers' compensation benefits.  Accordingly, the Court will (1) grant the part of the motion seeking an offset of (a) social security benefits, and (b) temporary workers' compensation benefits, (2) deny the part of the motion seeking an offset for monies paid to Morley as part of her discrimination lawsuit

62

against Avaya, and (3) deny without prejudice the part of the motion seeking an offset for any award of permanent workers' compensation benefits.

The defendants have shown that Morley's requests for relief under her breach of fiduciary duty claim in Count II of the complaint are duplicative of her potential remedies for the wrongful denial of benefits claim in Count I. Moreover, Gates and BCAC are not proper defendants in the wrongful denial of benefits claim. Thus, the Court will grant the motion for summary judgment on the breach of fiduciary duty claim, and (2) enter judgment in favor of BCAC and Gates on the wrongful denial of benefits claim.

The Court finds that the scope of the administrative record should include all documents presented from the inception of Morley's claim for LTD benefits to the second BCAC Committee's review and denial of her claim on December 10, 2004. The Court will (1) grant the part of the motion seeking to include all documents reviewed by both BCAC Committees (through December 10, 2004), and (2) deny the part of the cross motion seeking to limit the scope of the administrative record to include only those documents submitted by her from December 2001 (for BCAC's first review) through the commencement of this litigation on January 29, 2004. The Court will also (1) grant the part of the motion seeking to exclude certain documents, including proposed exhibits

63

4, 14, 67, 77, 80, 132-133, 141-142, 144, and 147-152, and (2) deny without prejudice the part of the motion seeking to exclude proposed exhibits 11, 35-37, 47-48, 98-99, and 134-35.  The Court will further (1) grant the part of the cross motion seeking to (a) exclude records relating to Morley's state court litigation against Avaya, and (b) include the (i) January 23, 2002 report of John Knightly, MD, (ii) January 30, 2002 job description prepared by James Bird of Avaya, (iii) March 11, 2004 report of Allyson K. Hurley, DDS, and (iv) February 10, 2003 medical report by Donald H. Frank, MD, (2) deny the part of the cross motion seeking to exclude (a) any "guidance, comments, or information" provided by BCAC Medical Advisor Alladin Motta, MD, and (b) the report of Joseph Basinger, MD, and (3) deny without prejudice the part of the cross motion seeking to include in the administrative record proposed exhibit 11.  The Court will issue an appropriate order and judgment.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge